## THE PEOPLE v. GEORGE C. JACKMAN.

*Criminal libel—Pleading—Duplicity—Evidence.*

1. A complaint for criminal libel in publishing three newspaper articles, which charges that the first article was intended to charge that the complainant had had an arm broken under dishonorable and disgraceful circumstances; that the second article was intended to charge that the complainant bore upon his person the marks of adventures at institutions of a disreputable character; and that the third article meant that the statement made by a certain doctor at a public meeting, that complainant's arm was broken while he was being ejected from a house of prostitution, was true,—is bad for duplicity.

2. The following propositions are summarized from the opinion of Mr. Justice GRANT, and are concurred in by the remaining Justices:

   *a*—The extrinsic matter introduced into the complaint was for the purpose of explaining the character and nature of the charge made in the publications complained of, and it was not only proper, but essential, that the pleader should state this, where the meaning would otherwise be doubtful.

   *b*—The statement that the respondent meant by the language used in the third article to say that Dr. Goerrs had told and explained to the people of Marquette correctly and truthfully that complainant's arm was broken while he was being ejected from a house of ill repute in Oshkosh, Wisconsin, was sufficiently definite, it not being necessary to set forth the exact language claimed to have been used.

   *c*—The law does not permit persons to publish that one has been guilty of criminal, infamous, or degrading acts, based upon public rumors or current belief.

Exceptions before judgment from Marquette. (Stone, J.) Argued April 21, 1893. Decided June 30, 1893.

Respondent was convicted of criminal libel under Act No. 210, Laws of 1885. Conviction set aside, and new trial ordered. The facts are stated in the opinion.

*Peters & Shaull,* for respondent.

*A. A. Ellis,* Attorney General, and *H. O. Young,*
Prosecuting Attorney, for the people.

GRANT, J.   The respondent was convicted of criminal
libel under Act No. 210, Laws of 1885.   Section 1 reads
as follows:

"That any person who shall falsely and maliciously, by
word, writing, sign, or otherwise, accuse, attribute, or
impute to another the commission of any crime, felony, or
misdemeanor, or any infamous or degrading act, or impute
or attribute to any female a want of chastity, shall be
deemed guilty of a misdemeanor, and, upon conviction
thereof for the first offense before any court of competent
jurisdiction, shall be punished by a fine not exceeding one
hundred dollars and costs of prosecution, or imprisonment
in the county jail of the county in which such conviction
shall be had, not exceeding ninety days, or both such fine
and imprisonment, in the discretion of the court."

Section 2 provides that no justice of the peace shall
have jurisdiction to try any person for a second or subse-
quent violation, but that when one is charged with a sec-
ond violation the justice must hold an examination, and
bind the accused over for trial in the circuit court if he
finds probable cause.   3 How. Stat. §§ 9315, 9315a.

The portions of the three articles published in the
Times, the newspaper edited by respondent, under the
dates of October 20, 21, and 22, and set forth in the
complaint, are as follows:

*October 20:* "The would-be humorous article in yester-
day morning's Mining Journal concerning the gasoline
explosion in 'Berney, Black & Co.'s sweat box' establish-
ment on Saturday evening accused the editor of the Times
of being sore, and endeavoring to do 'some roasting' him-
self.   In that (as in thousands of other things) the
'monopoly sheet' was mistaken, and once more jumped at
conclusions.   'Tis true the editor of the Times was the
unlucky victim who was seated in the 'infernal machine,'
and received a terrible roasting, but when the editorial item
referred to was written he was unable to write or think of

anything but his physical injuries. The author of that item is not classed as the editor of the Times, and does not desire to 'roast' anybody, but while misfortune reigns he will endeavor to do business at the old stand. It is well understood that accidents will at times occur, but the one of Saturday night was far more honorable than being 'rotten-egged,' or having an 'arm broken,' of which the victims of both desire but little said."

*October 21:* "The Times is not the only paper printed in Marquette at the present time that has been so unfortunate as to be represented by persons who do tricky things on the sly. But it intends to retain on its staff only such as can show a clean record for the past as well as present life, and no man upon it can rise to the dignity of managing editor whose history is identified with institutions of a disreputable character, even if he does not bear upon his person the marks of adventure at such places."

*October 22:* "In '1873,' while driving along a beautiful thoroughfare in Wisconsin, two vehicles collided, and, strange as it may seem, one person, an innocent, (?) peaceable, law-abiding citizen, was hurled to the ground, and received an injury, the marks of which he will carry to his grave. Again, strange as it may seem, the facts have just been explained. There was no 'ice in the wheels,' and why the collision should occur is a mystery. It is fortunate that in this age of the world excuses are numberless, and even at the eleventh hour a sinner may try and seek redemption in various forms. About three years ago Dr. Goerrs (whom the victim of the above-claimed accident ridiculed as being a fakir) explained to the people of Marquette how the accident did happen, and produced $1,000 as a proof of his assertions, but the 'Wisconsin unfortunate' had neither money nor disposition to dispute the charge until after the doctor had left the city. Our 'Wisconsin granger,' who brought nothing to this city aside from a brazen face, a vile tongue, contempt for his fellow men, and a hue and cry for monopoly, cannot expect, after eighteen years have elapsed, to try and pawn off such an unfortunate tale on an innocent public."

The complaining witness, Mr. Russell, editor of the Mining Journal, met with an accident some years before these publications, in which his arm was broken. After

the article of October 21 in the Times, Mr. Russell published an article in the Journal, stating how the accident occurred. The article of October 22 in the Times was written in reply to this. The complaint contained appropriate *innuendoes*, explaining the meaning of the article, but did not set forth the exact language claimed to have been used by Dr. Goerrs in his speech to the people of Marquette. Respondent was convicted in both the justice's and circuit courts. In the circuit court his counsel moved to quash the complaint for the following reasons:

1. Extrinsic matter should not have been introduced in the complaint.

2. The complaint is bad for duplicity.

3. The articles published are not libelous in themselves.

4. While the complaint recites the statements of Dr. Goerrs, it does not allege that the libel was published of and concerning that matter.

This motion was overruled.

1. The extrinsic matter introduced into the complaint was for the purpose of explaining the character and nature of the charge made in the publication complained of. It was not only proper, but essential, that the pleader should state this, where the meeting would otherwise be doubtful. The article of October 22 referred to an explanation made by Dr. Goerrs. The pleader stated that the respondent meant by this language to say that—

"Dr. Goerrs had told and explained to the people of Marquette correctly and truthfully * * * that the arm of said Russell had been broken while the said Russell was being ejected from a house of ill repute in Oshkosh, Wisconsin."

This was sufficiently definite, and it was not necessary to set forth the exact language claimed to have been used by Dr. Goerrs. The respondent fully understood the charge referred to, for one of his defenses was that he believed it to be true.

2. The complaint is not bad for duplicity. The three articles may fairly be construed together as making one charge and forming one offense. Not until the publication of the third article is any direct reference made to the specific charge that Mr. Russell's arm was broken in a house of ill fame, or to the specific charge made by Dr. Goerrs. The third article made clear what was meant by the first two, and thereby rendered the offense complete.

3. It requires no argument to show that the complaint charges an offense within the meaning of the statute. The act charged was degrading, and the complaint alleges that it was made falsely and maliciously.

4. We think the complaint not open to the objection that it does not allege that the libel was published of and concerning the charge made by Dr. Goerrs. The reference in the third article to the statement made by Dr. Goerrs rendered clear the meaning which before had been doubtful. It showed that the degrading act charged in the articles was that Mr. Russell was in a house of ill repute, and was ejected therefrom. By the publication respondent gave credit to the charge, and stated that it was true, and intended to do so. All that remained for the pleader to do was by the proper explanatory words to put the meaning beyond doubt, so that the respondent should know what he was required to meet.

5. Respondent offered to show by a witness that the facts alleged in the complaint as libelous had for a long time been currently reported and believed in the community, and that these facts had been so reported to him. This testimony was correctly rejected. The law does not permit persons to publish that one has been guilty of criminal, infamous, or degrading acts, based upon public rumors or current belief. The respondent made no effort to determine the truth of the charge, nor upon the trial

did he offer to prove its truth.    In the heat of a news-
paper controversy of no concern or interest to the public
he published an article defaming the character of a citizen.
Such conduct has no excuse, either in law or morals.
There were no justifiable ends to be accomplished by such
publication.

I think there is no error upon the record, and the court
below should be directed to proceed to judgment.

HOOKER, C. J.    Jackman was prosecuted for libel.    The
complaint and warrant (which take the place of an infor-
mation) allege the publication of three articles in the
issues of defendant's newspaper, upon three consecutive
days.    The theory of the prosecution is that these articles,
taken together, charge the complainant with a degrading
act, viz., of being at a house of prostitution in Wisconsin.
The defendant's counsel claim that each publication con-
stitutes a separate and distinct charge.

The first says, in speaking of complainant and his busi-
ness partner:

" It is well understood that accidents will at times occur,
but the one of Saturday night was far more honorable
than being ' rotten-egged,' or having an ' arm broken,' of
which the victims of both desire but little said."

The second says:    " The Times, [defendant's newspaper]
intends to retain on its staff only such as can show a clean
record for the past as well as present life, and no man
upon it can rise to the dignity of managing editor whose
history is identified with institutions of a disreputable
character, even if he does not bear upon his person the
marks of adventure at such places."

The third says, in substance:    " In 1873, while driving
*    *    *    in Wisconsin, two vehicles collided, and,
strange as it may seem, one person, an innocent, (?) peace-
able, law-abiding citizen,    *    *    *    received an injury,
the marks of which he will carry to his grave.    Again,
strange as it may seem, the facts have just been explained.
*    *    *    About three years ago Dr. Goerrs (whom the
victim of the above-claimed accident ridiculed as being a
fakir) explained to the people of Marquette how the acci-

dent did happen, and produced $1,000 as a proof of his assertions, but the 'Wisconsin unfortunate' had neither money nor disposition to dispute the charge until after the doctor had left the city. Our 'Wisconsin granger,' who brought nothing .to this city aside from a brazen face, a vile tongue, contempt for. his fellow men, and a hue and cry for monopoly, cannot expect, after eighteen years have elapsed, to try and pawn off such an unfortunate tale on an innocent public."

The complaint alleges that some years before the publication complained of the complainant was injured, and his arm broken, by being thrown from a carriage in Fond du Lac, Wis., and that three years before making the complaint, at a public gathering of a large number of the citizens ,of Marquette, said injury was referred to in a public speech by a Dr. Goerrs, who then and there falsely gave the citizens of Marquette to understand, and charged indirectly, that said injury was occasioned by the forcible ejection of complainant from a house of prostitution in Oshkosh. The information charges that the first of the articles was intended to charge that complainant had had an arm broken under dishonorable and disgraceful circumstances; that the second publication was intended to charge and give it out to be understood by the readers that the complainant did bear upon his person the marks of adventures at institutions of a disreputable character; and that the third publication meant that the statement of said Dr. Goerrs, that complainant's arm had been broken while he was being ejected from a house of prostitution, was true. Each publication, as interpreted by the pleader, charges a degrading act, within the meaning of the statute. The information is therefore open to the objection of duplicity. 1 Bish. Crim. Proc. §§ 432–442; Tiff. Crim. Law (3d ed.) 375. Under this information and general verdict of guilty, it is possible that the jurors did not agree upon the commission of one and the same offense.

Upon other points we concur in the opinion of Mr. Justice GRANT.

The conviction should be set aside, and a new trial ordered.

McGRATH, LONG, and MONTGOMERY, JJ., concurred with HOOKER, C. J.