PEOPLE v TOBEY

Docket Nos. 57462, 57463. Argued November 4, 1976 (Calendar No. 2). —Decided September 20, 1977.

Bradley L. Tobey was convicted by a jury in Washtenaw Circuit Court, Ross W. Campbell, J., of two counts of illegal sale of heroin. The defendant sold heroin to an undercover police officer. Five days later, the officer recorded two telephone conversations with a man whom he believed to be the defendant, and the next day he again purchased heroin from the defendant. The trial court compelled the defendant to give a voice exemplar, and expert testimony was admitted comparing the voices on the two recordings by voiceprint identification. The Court of Appeals, Danhof, P. J., and McGregor and D. F. Walsh, JJ., reversed on the ground that the prosecutor failed to lay a proper foundation for the admission of the testimony about the voiceprints (Docket Nos. 18301, 18302). The people appeal, and the defendant's motion to add issues was also granted. *Held:*

1. The admission of scientific evidence is limited to those techniques which have become sufficiently established to have gained general acceptance in the particular fields in which they belong. General scientific recognition may not be established without the testimony of disinterested and impartial experts, scientists whose livelihood is not intimately connected with the new technique.

2. The reliability of voiceprint evidence has not, as yet, been generally accepted by the scientific community concerned with acoustical science. In the instant case, the people introduced testimony by an experienced police officer, who is not a scientist, and by a professor of audiology. Neither witness, both of whose reputations and careers have been built on their voice-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 818, 825.

[3] 29 Am Jur 2d, Evidence §§ 381–383.

Admissibility and weight of voiceprint or sound spectograph evidence. 49 ALR3d 915.

[4] 41 Am Jur 2d, Indictments and Informations §§ 221–225.

[5, 6] 21 Am Jur 2d, Criminal Law § 165 *et seq.*

print work, can be said to be impartial or disinterested. The people have failed to demonstrate that voiceprint evidence has achieved general scientific acceptance as a reliable identification, and therefore the trial court erred in admitting the voiceprint evidence.

3. Separate and distinct offenses may be charged as separate counts in an information and joined for trial where they are committed by the same acts at the same time and the same testimony must be relied on for conviction.

4. While the defendant's conduct in selling heroin on different days to the same person is substantially similar conduct, it is not the same conduct or act. The sales were not a series of acts "connected" together, nor were they a series of acts constituting parts of a single scheme or plan. The defendant had no way of locating the undercover police agent in this case to consummate any scheme or plan to make continuing sales of drugs to him. Nor is there any evidence that the defendant had any such scheme or plan. The sales were always initiated by the police officer. For double jeopardy and joinder purposes each sale is separate conduct, a separate act and transaction, and a separate and distinct criminal offense.

5. A judge must sever two or more offenses when the offenses have been joined for trial solely on the ground that they are of the same or similar character and the defendant files a timely motion for severance objecting to the joinder; and a judge has no discretion to permit the joinder for trial of separate offenses committed at different times unless the offenses are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

The conviction is reversed and the case remanded for further proceedings.

60 Mich App 420; 231 NW2d 403 (1975) affirmed.

1. EVIDENCE—CRIMINAL LAW—ADMISSIBILITY—SCIENTIFIC EVIDENCE.

The admission of scientific evidence is limited to those techniques which have become sufficiently established to have gained general acceptance in the particular fields in which they belong.

2. EVIDENCE—CRIMINAL LAW—ADMISSIBILITY—SCIENTIFIC EVIDENCE—EXPERT WITNESSES.

General scientific recognition of a new technique may not be established without the testimony of disinterested and impartial experts whose livelihood is not intimately connected with the new technique.

3. EVIDENCE—CRIMINAL LAW—ADMISSIBILITY—VOICEPRINTS.

Voiceprint evidence has not achieved that degree of general acceptance by the scientific community concerned with acoustical science as a reliable identification device which will permit its introduction as evidence; testimony by witnesses whose reputations and careers have been built on their voiceprint work cannot be said to be impartial or disinterested testimony to establish the admissibility of voiceprint evidence.

4. INDICTMENT AND INFORMATION—TRIAL—JOINDER—SEPARATE COUNTS.

Separate and distinct offenses may be charged as separate counts in an information and joined for trial where they are committed by the same acts at the same time and the same testimony must be relied on for conviction.

5. CRIMINAL LAW—TRIAL—JOINDER—DOUBLE JEOPARDY.

A defendant's conduct in selling heroin on different occasions, 12 days apart, to the same person where the buyer, a police undercover agent, always initiated the purchases and the defendant had no way of locating the buyer to consummate any scheme or plan to make continuing sales of drugs is not the same conduct or act; for double jeopardy and joinder purposes each sale is separate conduct, a separate act and transaction, and a separate and distinct criminal offense.

6. CRIMINAL LAW—TRIAL—JOINDER.

A judge does not have the discretion to join for trial separate offenses committed at different times unless the offenses are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Lynwood E. Noah,* Senior Assistant Prosecuting Attorney, for the people.

*O'Brien, Moran & Dimond* for defendant.

LEVIN, J. Bradley Tobey was convicted of two

charges of sale of heroin[1] set forth in separate informations which were joined for trial.

The two sales, on February 17 and February 29, 1972, were made to a police undercover agent who, between the first and second sales, made three telephone calls to Tobey. The police recorded the calls, and the recordings were subjected to spectrographic (voiceprint) analysis. The results of that analysis were admitted at the trial, over objection, to corroborate the undercover agent's identification of Tobey as the person with whom he had conversed on the telephone.

The Court of Appeals reversed Tobey's conviction on the ground that there was not an adequate foundation in this case[2] for admission of voiceprint evidence.

The people contend that the foundation was adequate, and that spectrographic evidence is admissible.

Tobey, on cross appeal, contends that the trial judge erred in refusing to sever the two charges for trial.

We affirm the Court of Appeals, and remand for further proceedings.

We are of the opinion that the people failed to discharge their obligation of establishing that identification by use of the sound spectrograph has gained general acceptance in the scientific community; therefore, sound spectrographic evidence is not admissible.[3]

---

[1] MCLA 335.152; MSA 18.1122. [Repealed by 1971 PA 196, effective April 1, 1972. Now MCLA 335.341; MSA 18.1070(41).—REPORTER.]

[2] The recording was of a telephone conversation while the exemplar was of ordinary conversation; the spectrograph lacked calibration and proper maintenance; and the inculpatory recording was made in February and the exemplar was recorded a little over nine months later, in December, 1972, and there was no evidence that voiceprints do not change over such a period of time.

[3] Accordingly, there is no need to consider whether there was an adequate foundation.

The two informations charged distinct and separate offenses, and Tobey was entitled to a separate trial on each offense. On remand the prosecutor shall determine on which charge he first wishes to proceed.

# I

This Court recently reconsidered, in light of scholarly criticism,[4] the *Frye*[5] rule, adopted in earlier decisions of this Court,[6] limiting the admission of scientific evidence to a technique which has become "sufficiently established to have gained general acceptance in the particular field in which it belongs", and reaffirmed our adherence to that rule. *People v Barbara,* 400 Mich 352, 358, 406; 255 NW2d 171 (1977). In holding that polygraph (lie detector) evidence may be considered by a judge in deciding whether to grant a new trial but is not admissible at trial, this Court declared that general scientific recognition may not be established without the testimony of "disinterested and impartial experts", "disinterested scientists whose livelihood was not intimately connected with" the new technique. *Id,* pp 358, 376.

In the instant case, the people sought to establish the admissibility of voiceprint evidence through the testimony of Dr. Oscar Tosi and Lt. Ernest Nash.[7] The original voiceprint work was

---

[4] McCormick, Evidence (2d ed), § 203, p 491.

[5] *Frye v United States,* 54 US App DC 46, 47; 293 F 1013, 1014 (1923).

[6] *People v Becker,* 300 Mich 562, 566; 2 NW2d 503 (1942); *People v Davis,* 343 Mich 348, 370; 72 NW2d 269 (1955); *People v Morse,* 325 Mich 270, 274; 38 NW2d 322 (1949).

[7] The sound spectrograph is a machine which is capable of depicting sound recordings of the human voice in a visual, graphic manner. The spectrograph is operated by a person who compares the visual graph measurements from two sets of voiceprints: a recording known to be the defendant's voice, and an unknown recording. The visual graph

done by Lawrence Kersta for Bell Laboratories. Nash, an experienced police officer but not a scientist, was Kersta's pupil and assisted Tosi, a professor of audiology, in planning and conducting the study from which he concluded that voiceprints are reliable.[8] Neither Nash nor Tosi, whose reputations and careers have been built on their voiceprint work, can be said to be impartial or disinterested.

Reviewing this history, the supreme courts of California and Pennsylvania concluded recently that voiceprint evidence has not "achieved that degree of general scientific acceptance as a reliable identification device which will permit the introduction of voiceprint evidence". *People v Kelly,* 17 Cal 3d 24, 28; 130 Cal Rptr 144; 549 P2d 1240 (1976). *Commonwealth v Topa,* 471 Pa 223; 369 A2d 1277 (1977). Maryland's intermediate appellate court reached the contrary conclusion that such evidence is admissible. *Reed v State,* 35 Md App 472; 372 A2d 243 (Ct Spec App, 1977), *cert granted,* No. 62/Sept 1977 (Md Ct Apps, June 29, 1977). Nash or Tosi or both had testified in all three cases. Indeed, the work or testimony of Kersta, Tosi or Nash has been the principal evidence offered in support of the reliability of voiceprints in almost every case.[9]

The essential difference between the approaches

---

measures three parameters of the acoustical signal produced by the voice: time (horizontal axis); frequency (vertical axis); and intensity (the shading of the lines indicates how much energy is present in the speech signal at a particular time within the given frequency).

*See, generally,* Siegel, *Cross-Examination of a "Voiceprint" Expert: A Blueprint for Trial Lawyers,* 12 Crim L Bull 509, 510 (1976).

[8] Tosi, Oyer, Lashbrook, Pedrey, Nicol, & Nash, *Experiment on Voice Identification,* 51 J Acoustical Soc'y Am 2030 (1972).

[9] "It is also impossible to overlook the fact that in every case discussed, Oscar Tosi and Ernest Nash have been the key—and sometimes the only—expert witnesses. As stated previously, the amount of weight and credibility given by the courts to the testimony of these two men and to the Tosi study cannot be over-emphasized. In

of the Maryland court and of the California and Pennsylvania courts is that the Maryland court did not require independent and impartial proof of general scientific acceptability, and the California and Pennsylvania courts require such proof, as does this Court, *People v Barbara, supra.*

The California court, after considering the work of Kersta and Tosi, and Nash's testimony, concluded that "additional and impartial evidence regarding general acceptance" was required before the people would be deemed to have carried "their burden of establishing the reliability" of voiceprint evidence. *People v Kelly, supra,* pp 38, 40.

The Pennsylvania court, expressing its respect for Lt. Nash's "considerable expertise in the area of spectrography", similarly stated that "his opinion, alone, will not suffice to permit the introduction of such scientific evidence into a court of law. Admissibility of the evidence depends upon the *general* acceptance of its validity by those scientists active in the field to which the evidence belongs." *Commonwealth v Topa, supra,* p 231; 369 A2d 1281 (emphasis in original).

The Pennsylvania court concluded, after reviewing the criticism of Kersta's and Tosi's work in articles published in the Journal of the Acoustical Society of America,[10] "that the reliability of the

*every* appellate decision cited, the same person, Lt. Nash, has been the only witness called by the prosecution to testify and give his opinion as to whether the comparison of the spectrograms indicates that the unknown caller and the defendant are the same person." Siegel, *supra,* p 517.

*See, e.g., Commonwealth v Lykus,* 367 Mass 191; 327 NE2d 671 (1975); *United States v Addison,* 162 US App DC 199; 498 F2d 741, 745 (1974); *State v Andretta,* 61 NJ 544; 296 A2d 644 (1972); *State ex rel Trimble v Hedman,* 291 Minn 442; 192 NW2d 432 (1971); *Worley v State,* 263 So 2d 613 (Fla App, 1972); *Alea v State,* 265 So 2d 96 (Fla App, 1972); *United States v Franks,* 511 F2d 25, 33 (CA 6, 1975); *United States v Baller,* 519 F2d 463, 466 (CA 4, 1975).

[10] Bolt, Cooper, David, Denes, Pickett & Stevens, *Speaker Identifica-*

sound spectrograph and voiceprint identification has not, as yet, been generally accepted by the scientific community concerned with acoustical science". *Id,* p 232; 369 A2d 1282.

We conclude that the people have failed to demonstrate that voiceprint evidence has achieved general scientific acceptance as a reliable identification device, and therefore the trial court erred in admitting the voiceprint evidence. We echo the statement of the California Supreme Court that this "decision is not intended in any way to foreclose the introduction of voiceprint evidence in future cases * * * where there is demonstrated solid scientific approval and support of [this] new method" of identification. *People v Kelly, supra,* p 41.

## II

The Court of Appeals rejected the people's contention that "the two offenses, which occurred 12 days apart, constitute a single transaction for purposes of double jeopardy and, therefore, must be tried together", but concluded that the trial judge had discretion which he did not abuse by denying Tobey's motion for separate trials.

In *People v Johns,* 336 Mich 617; 59 NW2d 20 (1953), this Court reviewed its earlier opinions and ruled that separate and distinct offenses may be charged as separate counts in an information and joined for trial where they are "committed by the same acts *at the same time* and the same testimony must be relied on for conviction".[11] "It is to

*tion by Speech Spectrograms: A Scientists' View of its Reliability for Legal Purposes,* 47 J Acoust Soc Am 597, 603 (1970); Bolt, *et al, Speaker Identification by Speech Spectrograms: Some Further Observations,* 54 J Acoust Soc Am 531 (1973).

[11] This passage was quoted approvingly by the Court in *People v*

be noted that this Court has emphasized that the offenses charged in the several counts must arise out of substantially the same acts *committed at the same time." People v Johns, supra,* p 623 (emphasis supplied).

While Tobey's conduct in selling heroin on different days to the same person is substantially similar conduct, it is not the same conduct or act. For double jeopardy and joinder purposes each sale is separate conduct, a separate act and transaction, and, as the Court of Appeals correctly noted, a separate and distinct criminal offense.

In *Blockburger v United States,* 284 US 299, 301–302; 52 S Ct 180; 76 L Ed 306 (1932), the defendant was convicted of three sales of morphine to the same purchaser and sentenced to serve five years and pay a fine on each count, the terms of imprisonment to run consecutively. The United States Supreme Court, affirming the convictions and sentences, rejected the defendant's contention that the second and third sales constituted but one offense because they were made to the same person on successive days:

"The sales charged in the second and third counts, although made to the same person, were distinct and separate sales made at different times. It appears from the evidence that shortly after delivery of the drug which was the subject of the first sale, the purchaser paid for an additional quantity, which was delivered the next day. But the first sale had been consummated, and the payment for the additional drug, however closely following, was the initiation of a separate and distinct sale completed by its delivery.

"The contention on behalf of petitioner is that these

*Johns,* 336 Mich 617, 623; 59 NW2d 20 (1953), and, as there noted, is from the "[s]yllabus in *People v Sweeney,* 55 Mich 586 [22 NW 50 (1885)], as quoted with approval in *People v Larco",* 331 Mich 420, 428; 49 NW2d 358 (1951).

two sales, having been made to the same purchaser and following each other with no substantial interval of time between the delivery of the drug in the first transaction and the payment for the second quantity sold, constitute a single continuing offense. The contention is unsound. The distinction between the transactions here involved and an offense continuous in its character is well settled, as was pointed out by this court in the case of *In re Snow*, 120 US 274 [7 S Ct 556; 30 L Ed 658 (1887)]."[12]

Reference has been made to the ABA Standards Relating to Joinder and Severance which permit joinder of offenses which "are of the same or similar character", or which "are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan".[13] The standards also provide, however,

---

[12] The Court continued:

"There it was held that the offense of cohabiting with more than one woman, created by the Act of March 22, 1882, ch 47, 22 Stat 31, was a continuous offense, and was committed, in the sense of the statute, where there was a living or dwelling together as husband and wife. The court said (pp 281, 286):

" 'It is, inherently, a continuous offence, having duration; and not an offence consisting of an isolated act.

\* \* \*

" 'A distinction is laid down in adjudged cases and in textwriters between an offence continuous in its character, like the one at bar, and a case where the statute is aimed at an offence that can be committed *uno ictu.'* " *Blockburger v United States,* 284 US 299, 302; 52 S Ct 180; 76 L Ed 306 (1932).

The Court in *In re Snow,* 120 US 274; 7 S Ct 556; 30 L Ed 658 (1887), concluded that since the gist of the offense is cohabitation with more than one woman, there is but one offense even if the man cohabited with more than two women.

[13] "Two or more offenses may be joined in one charge, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:

"(a) are of the same or similar character, even if not part of a single scheme or plan; or

"(b) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance (Approved Draft, 1968), Standard 1.1.

that when offenses have been joined "solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses", and that in the other situations where joinder is permitted the court shall grant a severance "whenever * * * it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense".[14]

Since we conclude that the two sales were not the "same conduct," or "a series of acts connected together", or "a series of acts * * * constituting parts of a single scheme or plan", and therefore the only basis for joining the two offenses in the instant case is that they "are of the same or similar character," Tobey, under these standards, had a right to severance.

The commentary accompanying the standards explains that "same conduct" refers to multiple offenses "as where a defendant causes more than one death by reckless operation of a vehicle". "A series of acts connected together" refers to multiple offenses committed "to aid in accomplishing another, as with burglary and larceny or kidnapping and robbery". "A series of acts * * * constituting parts of a single scheme or plan" refers to a situation "where a cashier made a series of false entries and reports to the commissioner of bank-

---

[14] "(a) Whenever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses.

"(b) The court, on application of the prosecuting attorney, or on application of the defendant other than under subsection (a), should grant a severance of offenses whenever:

"(i) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or

"(ii) if during trial upon consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. The court should consider whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." *Id,* Standard 2.2.

ing, all of which were designed to conceal his thefts of money from the bank";[15] similarly see *People v McKinney,* 10 Mich 54, 94–95 (1862).

While Tobey's conduct in selling heroin on February 17 and February 29 was of a "same or similar character" it was not the "same conduct".

While the same person was the purchaser at each sale, two sales 12 days apart are not "connected" in the sense in which that term is used in these standards. *People v Johns, supra,* illustrates a series of connected acts properly joined. Counts charging Johns with maintainng a gaming room table and with keeping a place where gambling was permitted were joined. "The acts committed, proof of which was essential to a conviction on each of the counts, occurred within an hour and a half and out of substantially the same transaction." *Id,* p 624. Similarly, if a person were to escape prison, steal an automobile and take hostages, all the offenses might be tried together as a series of connected acts. The fact that here there is but one seller and one purchaser cannot alone "connect" acts 12 days apart.

---

[15] "Thus, joinder is clearly allowed for offenses arising out of the same conduct, as where a defendant causes more than one death by reckless operation of a vehicle. (In some cases, as where there is a theft of goods belonging to more than one person, the question may arise whether more than one crime has been committed; that is a question of substantive law and is not dealt with here.) Joinder is allowed of offenses within a close time-space sequence, as with the killing of several people with successive shots from a gun or the successive burning of several structures, *e.g., Scott v State,* 211 Wis 548; 248 NW 473 (1933). The same is true where one offense is committed to aid in accomplishing another, as with burlgary and larceny or kidnapping and robbery, *e.g., People v Koblitz,* 401 Ill 224; 81 NE2d 881 (1948). Finally, joinder is allowed for offenses which are part of a single scheme, even if considerable time passes between them. Illustrative is *Ruth v State,* 140 Wis 373; 122 NW 733 (1909), where a cashier made a series of false entries and reports to the commissioner of banking, all of which were designed to conceal his thefts of money from the bank." *Id,* Commentary to Standard 1.1(b), pp 12–13.

Nor is there a single scheme or plan. The undercover police agent testified that he never gave Tobey his telephone number or address. Accordingly, Tobey had no way of locating the officer to consummate any scheme or plan to make continuing sales of drugs to him; nor is there any evidence that Tobey had any such scheme or plan. The officer stated that he "always called down" any time he wished to see Tobey to make a purchase, and responded affirmatively to the question whether the sales and purchases were "always initiated" by him.

We adhere again to our earlier precedents[16] and hold: a judge must sever two or more offenses when the offenses have been joined for trial solely on the ground that they are of the "same or similar character" and the defendant files a timely motion for severance objecting to the joinder; and a judge has no discretion to permit the joinder for trial of separate offenses committed at different times unless the offenses "are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." ABA Standards Relating to Joinder and Severance, Standard 1.1.[17]

"It seems to me unanswerable that no man should be

[16] *People v Oberstaedt,* 372 Mich 521, 525; 127 NW2d 354 (1964); *People v Kruper,* 340 Mich 114, 121; 64 NW2d 629 (1954); *People v Johns, supra,* p 622; *People v Andrus,* 331 Mich 535, 540; 50 NW2d 310 (1951); *People v Rohrer,* 100 Mich 126; 58 NW 661 (1894); *People v Jackman,* 96 Mich 269, 275; 55 NW 809 (1893); *People v Aikin,* 66 Mich 460, 467–468; 33 NW 821 (1887); *People v Sweeney,* 55 Mich 586, 588; 22 NW 50 (1885); *Tiedke v Saginaw,* 43 Mich 64; 4 NW 627 (1880).

*See, generally,* 1, 2 Gillespie, Michigan Criminal Law and Procedure (2d ed), §§ 371, 372, 553.

[17] Such discretion is subject to an application to the judge seeking a severance on a ground set forth in Standard 2.2(b). *See* fn 14, *supra,* for the text of Standard 2.2.

prejudiced in this manner when on trial for a capital offense. He has a right to be warned by the complaint and warrant of what he is accused, and ought not to be convicted of two different crimes, committed at different times, under one information, with the evidence of each confounded as a whole, and used indiscriminately to convict him of both. Such a proceeding violates every principle of justice, and places him at the mercy of the prosecutor; and, as, in this case, evidence not competent to prove one of the offenses, but admissible as to the other, is used to establish both crimes. Such a trial must necessarily be an unfair and illegal one." *People v Aikin,* 66 Mich 460, 472; 33 NW 821 (1887).

Conviction reversed and remanded for further proceedings.

KAVANAGH, C. J., and WILLIAMS, COLEMAN, FITZGERALD, and RYAN, JJ., concurred with LEVIN, J.

BLAIR MOODY, JR., J., took no part in the decision of this case.