*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 2, 2022

Plaintiff-Appellee,

v

No. 357633
Jackson Circuit Court

TAYLOR STORM BREINING,

LC No. 20-003035-FC

Defendant-Appellant.

Before: LETICA, P.J., and MARKEY and O'BRIEN, JJ.

LETICA, P.J. (*dissenting*).

The armed robbery of Jonathan Whiting and the assault with the intent to commit murder (AWIM) of Austin Puhr were unrelated because they were not a series of connected acts or a series of acts constituting parts of a single scheme or plan. Therefore, the trial court erred when it denied defendant's motion for severance. The trial court further erred when it opined that the acts would be admissible under MRE 404(b) and that a jury instruction would be sufficient to protect defendant's right to a fair trial. I would reverse the trial court's order denying defendant's motion for severance and remand for separate trials as mandated by the plain language of MCR 6.120(C).[1]

## I. BACKGROUND

The facts underlying the Whiting armed robbery and the Puhr AWIM are undisputed and were presented during preliminary examination. Defendant later moved for severance, which the prosecution opposed because, in its view, the incidents were part of a series of connected acts and a crime spree that began with the armed robbery of Whiting and ended with the attempted armed robbery of Puhr.[2] Additionally, the prosecution viewed each incident as admissible MRE 404(b)

---

[1] I agree that defendant's unpreserved constitutional challenges do not warrant relief. I also agree that defendant's admission that he possessed a firearm shortly after the Whiting armed robbery is admissible. See *People v Hall*, 433 Mich 573, 583-584; 447 NW2d 580 (1989).

[2] An attempted armed robbery is included in the definition of armed robbery. MCL 750.529 and MCL 750.530; see also *People v Williams*, 491 Mich 164, 172; 814 NW2d 270 (2012)

evidence, meaning that the court's limiting instructions would ensure the jury would not improperly use either incident as proof of defendant's propensity to commit armed robbery. When denying defendant's motion for severance, the trial court explained:

> [I]ronically, . . . this brings me up to a case that I was right on [what] I thought where the [j]udge sever[ed] it, my very first jury trial as prosecutor.
>
> And you know . . . it really caused some confusion with the case . . . and then ironically, I had another murder trial here where the . . . defense attorney, . . . wanted to bring in evidence of this crime spree that these defendants were involved in. They were breaking . . . into homes during about a similar time frame that we're talking about. Broke into multiple different residences.
>
> And then they finally get to the residence . . . and they're . . . obviously trying to break into his garage and in the outer part of his property. The homeowner gets out a gun, shoots and kills [th]em both.
>
> And of course my . . . personal feeling as the trial judge is this defendant's now on trial for murder and gosh, it sure would be nice if maybe we . . . heard the whole story. You know, that – that's what I was thinking. You know, gee, . . . he's on trial for murder and may – maybe the jurors should know that these two guys weren't a couple of Jehovah Witnesses out at his front door.
>
> And . . . you know what? The Court – the Court of Appeals came back and said, "You know what, [j]udge, the problem is . . . that the defen – or the victim – the or the – excuse me, the defendant didn't know anything about that, because they were – it was part of a different crime spree that he didn't know about. I still have to tell you I think that was wrong. I still – I – I still question whether that defendant got a fair trial.
>
> And you know, and – and ironically, the defense was kinda trying to bring up [the] MRE 404[(b)] rule, too, that says, "Well, if there's a 404[(b)] rule for prosecutors[,] there ought to be a 404[(b)] rule for defense attorneys, too." I thought there was some symmetry in that argument, by the way.
>
> But . . . the Court of Appeals, when they weighed [in] on that, I don't know if it'll . . . go further . . . than it was, but . . . in some ways, it was the same – (undecipherable) – by the way, same – same car, same group, except that the – one of the drug participants at the final shooting where the alleged murder occurred, he was a – (undecipherable) – car that contained a . . . bunch of the stolen property.

But . . . in the end, the Court of Appeals notes that that should be severed, that they – they apparently didn't find a sufficient connection.[3]

Well, the [c]ourt is going to make . . . a finding as follows. That I am going to find that these are a series of connected events. We're dealing with a—with a 12-hour crime spree that I agree with [the prosecutor], started as an armed robbery and it ended as an armed robbery.

Not only are the crimes related by sheer proximity and time to one another, they are all perpetrated by the same two individuals, one directly after the other throughout the course of a single day—12-hour spree. They all involve the use of a firearm. In fact [they] were all perpetrated by the use of the same vehicle, a blue Chevy Cruze.

---

[3] The trial court appeared to be referencing *People v Lawrence*, unpublished per curiam opinion of the Court of Appeals, issued February 13, 2018 (Docket No. 339228). There, the prosecution appealed the trial court's order granting the defendant's motion to admit other-acts evidence at his trial on two counts of second-degree murder and one count of felony-firearm. Early in the morning, the defendant had seen two men on his property in a rural area. One was checking the handle on the defendant's detached garage; the other, the handle on the defendant's truck. The defendant retrieved his .22-caliber rifle and yelled at the men, who he claimed he thought came running toward him. Their actions led him to shoot at the ground in their direction. The defendant watched one man go down and continued to shoot until the other man was out of sight. The first man was found face-down, 30 yards from the house with a fatal wound to the back of his head; the second man was found 100 yards from the house with fatal wound to his back. "Before trial, [the] defendant sought to admit evidence that the decedents had committed a string of break-ins in the hours leading up to the shooting." *Id*. at 1. The trial court ruled "the evidence of decedents' 'crime spree' . . . was admissible under MRE 404(b) to prove modus operandi[,]" that they were not " 'just a couple of Jehovah Witnesses walking up to the property,' " and "that this evidence had 'a logical tendency to prove or disprove at least what the [decedents] were there for.' " *Id*. at 1-2. As the trial court explained during its decision in this case, this Court reversed because "[e]vidence of the decedents' alleged crime spree [was] not material because it [did] not tend to prove or disprove any element of second-degree murder or [the defendant's theory of] self-defense." *Id*. at 3. Indeed, as also mentioned by the trial court, this Court explained that the "[d]efendant had no knowledge of the decedents' alleged criminal activities before he saw them on his property," and "[t]herefore, those acts [were] not probative of [the] defendant's belief" that he was in danger of death or serious bodily harm." *Id*. at 3. Finally, "whether the decedents were, or were not, legally on [the] defendant's property [was] not relevant to whether [the] defendant acted in self-defense or committed second-degree murder." *Id*. at 3-4. While the defendant's belief "that the decedents were on his property illegally [might] be relevant to his self-defense theory, the proffered evidence [did] not establish what [the] defendant did or did not believe." *Id*. at 3-4.

Notably, the question in *Lawrence* was not severance.

-3-

The . . . State cites *People v [Vegh]*, [unpublished per curiam opinion of the Court of Appeals, issued January 11, 2018 (Docket No. 333242)[4]], which they attach to their brief. In that case, the defendant was charged with [c]riminal [s]exual [c]onduct of multiple different victims throughout the course of several days. The fact that the separate charges involve different victims at different times was not a proper justification for the severance of the defendant's charges.

So in this case, I think that there is a sufficient series of connections between the all—alleged acts such that they should not be severed.

I don't think that there's undue prejudice in this case either, because among other things, if the State did have to chop up their case and try separate cases, they . . . would bring in . . . MRE 404[(b)] evidence. [The c]ourt would . . . [in] all likelihood give limiting instructions. This may be a case where it's appropriate to use limiting instructions.

But sometimes I think the law should find . . . the cases, when they're related to a series of connected events as they are in this case, should be tried all as . . . one piece, not piece-mealed out into separate different episodes.

So I end up, like the case with . . . [*People v Jeffrey*] *Nathaniel* . . . [*Pope*, unpublished per curiam opinion of the Court of Appeals, issued March 23, 1999 (Docket No. 204645),[5]] and I'm trying to explain to the jury – . . . I can't explain why [the Jackson Narcotics Enforcement Team's] . . . there looking for drugs because the [j]udge has cut me off at the knees saying you can't talk about that. You can only talk about the shooting of the police officers.

Well, later on the Court of Appeals said, "Nu-uh, Judge Grant, you were wrong about that. You should have let the prosecutor try [th]em both again [sic]."

---

[4] The defendant in *Vegh* stipulated to consolidation of cases involving the sexual assault of his stepdaughter and the sexual assaults of two unrelated teenage girls who had stayed in his home. *Vegh*, unpub op at 1-2. After trial, defendant was convicted of the charges related to his stepdaughter, but acquitted of the charges related to the other girls. The defendant claimed that counsel was ineffective for stipulating to consolidation. *Id*. at 2. This Court determined that "[t]he facts and circumstances support a finding that permissive joinder would have been appropriate under MCR 6.120(B)(1)(c), because [the] defendant was engaged in a series of acts constituting parts of a single scheme or plan to sexually assault young girls staying in his home." *Id*. at 4. Nor was defendant unfairly prejudiced because the evidence of the other sexual assaults would have been admitted under MCL 768.27a. *Id*.

[5] As this Court recently explained, the trial court's reliance on *Pope* is misplaced because it is neither precedentially binding, MCR 7.215(C)(1), nor did it address the severance question. *People v Jarrell*, unpublished per curiam opinion, issued February 10, 2022 (Docket No. 357753), slip op at 2 n 2. Rather, as the trial court recognized, the defendant had two separate trials because the *Pope* trial court judge determined that the "charges lacked sufficient connection." *Id*.

They were a series of connected events randomly with a short time frame that we're dealing – (undecipherable) – in this case, so.

Motion to sever the cases is . . . denied. Motion to sever the defendants from – into separate trials is denied.

## II. SEVERANCE OF THE CHARGES

### A. MCR 6.120

Joinder and severance of charges is governed by MCR 6.120, which states:

(A) Charging Joinder. The prosecuting attorney may file an information or indictment that charges a single defendant with any two or more offenses. Each offense must be stated in a separate count. Two or more informations or indictments against a single defendant may be consolidated for a single trial.

(B) Postcharging Permissive Joinder or Severance. On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.

(1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

(a) the same conduct or transaction, or

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

(2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

(3) If the court acts on its own initiative, it must provide the parties an opportunity to be heard.

(C) Right of Severance; Unrelated Offenses. On the defendant's motion, the court must sever for separate trials offenses that are not related as defined in subrule (B)(1).

### B. ISSUE PRESERVATION AND STANDARD OF REVIEW

Defendant preserved this issue by moving for severance. And "[w]hether joinder is appropriate is a mixed question of fact and law." *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014). The analysis is straight-forward:

> To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute related offenses for which joinder is appropriate. This Court reviews a trial court's factual findings for clear error and its interpretation of a court rule, which is a question of law, de novo. [*Id.* (quotation marks and citations omitted).]

"Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013).

The court rule, however, "does not permit the joinder of those offenses that are only of the same or similar character." *People v Williams*, 483 Mich 226, 246; 769 NW2d 605 (2009) (quotation marks omitted). But, if the defendant's request for severance is timely and the offenses are unrelated, severance is mandatory. *Id.* at 234 n 6. If, on the other hand, this Court concludes that the offenses are eligible for joinder, the trial court's ultimate decision to join the offenses for a single trial is reviewed for an abuse of discretion. *Gaines*, 306 Mich App at 304.

### C. DISCUSSION

The trial court determined that the offenses—the Whiting armed robbery and the Puhl AWIM—were armed robberies[6] committed by the same defendants,[7] on the same day, in close geographic proximity,[8] using the same vehicle,[9] and handguns.[10] The trial court viewed these

---

[6] See footnote 2.

[7] Whiting identified the five culprits who robbed him as defendant, Boyer, Boyer's girlfriend, April Rudd, and Christina Green. The first three were armed; the latter two were not.

Puhr identified defendant and Boyer as the robbers. Puhr testified that Boyer was armed and the prosecution dismissed the felony-firearm charge it had initially issued against defendant.

[8] Both locations were in Jackson County, approximately fourteen miles apart.

[9] Whiting described one vehicle as a dark-colored Ford and the other vehicle as dark-colored, but was unsure about its make.

Puhr, on the other hand, recognized the blue Chevy that defendant sometimes drove.

[10] Whiting described multiple weapons being used. Defendant had a black handgun while Boyer had an AR assault weapon and a black handgun.

Puhr described Boyer as racking a black Glock that looked like a Hi-Point. Several weapons were apparently recovered from the home where Boyer resided. At preliminary examination, Puhr

offenses as a "crime spree." Accordingly, it concluded that the offenses were related within the meaning of MCR 6.120(B)(1) as "a series of connected acts," MCR 6.120(B)(1)(b), or "a series of acts constituting parts of a single scheme or plan[,]" MCR 6.120(B)(1)(c).

In explaining when "offenses might be tried together as a series of connected acts[,]"[11] our Supreme Court provided two examples. *People v Tobey*, 401 Mich 141, 152; 257 NW2d 537 (1977), superseded by court rule as recognized in *Williams*, 483 Mich at 238-242. The first example involved joining charges of "maintaining a gaming room table and . . . keeping a place where gambling was permitted . . . ." *Id*. The Court described these acts as occurring within ninety minutes and arising "out of substantially the same transaction." *Id*. (quotation marks and citation omitted). The second example described a situation where a prison inmate escapes, steals a car, and takes hostages. *Id*. See also *People v Abraham*, 256 Mich App 256, 268, 271-272; 662 NW2d 836 (2003) (The trial court properly joined charges of first-degree premeditated murder, assault with the intent to commit murder, and their accompanying felony-firearm charges after the defendant stole a rifle and shot at two individuals within two hours in the same neighborhood and with the same gun "interspersed with target shooting at various outdoor objects."); *People v Solak*, 146 Mich App 659, 664-665, 667; 382 NW2d 495 (1985) (The trial court properly joined charges of driving under the influence and assault and battery after an officer stopped the defendant for speeding, and the defendant, who was intoxicated, assaulted the officer as he was in the process of citing the defendant for speeding.[12]) These situations fit with the commonly understood definition of the word "connected" because they are "joined or linked together" or "hav[e] . . . parts or elements logically linked together." *Merriam-Webster's Collegiate Dictionary* (11th ed).

Although the circuit court in this case referred to the offenses three times as "a series of connected events," the court rule refers to "a series of connected acts." MCR 6.120(B)(1)(b). There is no actional overlap between the Whiting armed robbery and the Puhr AWIM, nor is there a logical link with one act springing from an earlier act as described in *Tobey*, *Abraham*, and *Solak*. Instead, each offense is easily established without reference to the other. Whiting was asleep inside his camper when a five-person group, comprised of three armed culprits, including defendant and Boyer, arrived unannounced in two vehicles and demanded personal property or money, some of which they asserted belonged to Green or Boyer or a third person over the course of 1½ to 2 hours. More than twelve hours later, Puhr was sitting inside the Chevy Cruze to complete a pre-arranged drug transaction. Boyer racked a gun after defendant demanded "the shit," presumably referencing the methamphetamine. Puhr managed to jump from the car with Boyer shooting Puhr as he ran. Defendant then turned the car around to pursue Puhr and Boyer left the car to shoot Puhr, who was

---

did not testify that defendant was armed, and the prosecution dismissed the felony-firearm charge against defendant as to the Puhr incident.

[11] " 'A series of acts connected together' refers to multiple offenses committed 'to aid in accomplishing another, as with burglary and larceny or kidnapping and robbery.' " *Tobey*, 401 Mich at 151, quoting ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance (Approved Draft, 1967), Standard 1.1, commentary.

[12] The Supreme Court adopted MCR 6.120 in 1989. *Williams*, 483 Mich at 242.

lying on the ground. These offenses are simply not a series of connected acts, and the prosecution has abandoned any argument that these offenses were a series of connected acts on appeal.

Instead, the prosecution posits that the trial court's denial of defendant's request for severance was proper because the offenses were "a series of acts constituting parts of a single scheme or plan." MCR 6.120(B)(1)(c). The problem for both the trial court and the prosecution is that categorizing the two offenses as a crime spree does not make it so. See e.g., *People v Warren*, 462 Mich 415, 417-419, 431; 615 NW2d 691 (2000) (describing a crime spree where the defendant murdered his mother-in-law after breaking into her house, sexually and physically assaulted his wife, kidnapped her, and then stole his mother-in-law's car); *Chivas v Koehler*, 182 Mich App 467, 470; 453 NW2d 264 (1990) (two escaped inmates "went on a crime spree, committing several murders"); *People v Reed*, 172 Mich App 182, 186; 431 NW2d 431 (1988) (detailing a one-week crime spree where the defendant raped, sexually assaulted, and robbed, at times at gunpoint, at least four different women in separate locations); *People v Laidlaw*, 169 Mich App 84, 86-90; 425 NW2d 738 (1988) (recounting a crime spree where the defendant was convicted of eight crimes, including criminal sexual conduct, assault with the intent to commit criminal sexual conduct involving penetration, breaking and entering an occupied dwelling, unlawfully driving away an automobile, and entry without permission, as the result of his actions in the course of one morning). More importantly, it does not satisfy the court rule's plain language, requiring "a series of acts constituting parts of *a single scheme or plan*." *Id*. (emphasis added).

Returning to *Tobey*, the Supreme Court explained that "a series of acts * * * constituting parts of a single scheme or plan refers to a situation where a cashier made a series of false entries and reports to the commissioner of banking, all of which were designed to conceal his thefts of money from the bank[.]" 401 Mich at 152 (quotation marks and citation omitted). And after this same language was codified in the court rule, our Supreme Court upheld a trial court's order granting the prosecution's motion to consolidate for trial separately charged drug and weapons offenses in November 2004 and February 2005. *Williams*, 483 Mich at 236-238, 249-250. In *Williams*, the defendant was arrested after each offense and accoutrements associated with drug-trafficking were found. *Id*. at 230. Following the November offense, the defendant was charged with possession with the intent to deliver 50 grams or more, but less than 450 grams, of cocaine, felon-in-possession, and two counts of felony-firearm. *Id*. And following the February offense, the defendant was charged with possession with the intent to deliver less than 50 grams of cocaine, felon-in-possession, and felony-firearm. *Id*. Although the police found the evidence of the defendant's drug activity after executing search warrants at separate locations three months apart, "the offenses charged were related because the evidence indicated that [the] defendant engaged in ongoing acts constituting parts of his overall scheme or plan to package cocaine for distribution." *Id*. at 234-235. Accordingly, the Supreme Court affirmed the trial court's conclusion that the offenses charged were related because they "reflect[ed] [the] defendant's 'single scheme or plan' of drug trafficking." *Id*. at 234, quoting MCR 6.120(B).

Similarly, this Court has upheld a trial court's decision to join offenses charging a defendant with sexually assaulting multiple children for trial because such offenses constitute a series of acts constituting parts of a single scheme or plan. See *Gaines*, 306 Mich App at 303-306; *People v Bailey*, 310 Mich App 703, 718-719; 873 NW2d 855 (2015) (or a series of connected acts).

Citing to *People v Wood*, unpublished per curiam opinion of the Court of Appeals, issued September 12, 2019 (Docket No. 342900), the prosecution asserts that the court rule's language equally applies when armed robbery offenses are joined. In *Wood*, the prosecution charged the defendant with the armed robbery of a Walgreens in Grand Rapids and a second armed robbery of a gas station, committed a week later, in the City of Wyoming. This Court held:

> In this case, defendant's conduct in the two robberies was substantially similar, evidencing a "single scheme or plan." See MCR 6.120(B)(1)(c). Defendant's common scheme involved entering stores when they were nearly empty, purchasing a drink, asking for change for a dollar, pretending to be armed, and assaulting the clerk while attempting to take cash from the open drawer. The two robberies for which defendant was tried happened only seven days apart. The factual similarities between the two robberies evidence a common plan—a series of connected acts constituting a single scheme or plan to perpetuate armed robberies. [*Wood*, unpub op at 5.]

As already discussed, the Whiting armed robbery and the Puhr AWIM, while near in time and location, involved different participants and acts. Unlike the identical armed-robbery process employed in *Wood*, the obvious differences between the Whiting armed robbery and the Puhr AWIM render them distinguishable. Simply put, there is no evidence that these offenses were based on "a series of acts constituting parts of a single scheme or plan."

But, even if these offenses were somehow related under the court rule, I would nevertheless conclude that the trial court abused its discretion in determining that they should be joined for trial. The trial court essentially decided that the evidence of the Whiting armed robbery would be admissible as other-acts evidence under MRE 404(b) as to the Puhr AWIM and vice versa. But the proper test for determining whether offenses may be joined for trial is whether they are related under MCR 6.120(B)(1), not whether the evidence could be offered for a proper purpose under MRE 404(b) in a trial on the other charge.[13]

Moreover, I question whether evidence of the Puhr AWIM would be admissible under MRE 404(b) as to the Whiting armed robbery and vice versa. The prosecution suggests that it would be admissible

> to show [defendant's] motive and intent in [the Whiting armed robbery] was not to reclaim property of another[] but to steal it at gun[]point just as he did in [the Puhr AWIM]. Similarly, defendant's violent crime spree is important to show that his

---

[13] I recognize that the Supreme Court determined that even if unrelated offenses were improperly joined for trial, whether that offense would have been admissible under MRE 404(b) factors into the analysis of whether the defendant was prejudiced by misjoinder. *Williams*, 483 Mich at 244-245. And, unlike the prosecutor in *Williams*, 483 Mich at 229-230, the prosecutor in this case did not provide written notice that it sought to admit the evidence under MRE 404(b)(1).

actions in [the Puhr AWIM] were not self-defense[14] but rather to steal drugs at gun[]point.

Oddly, the prosecution does not reference "scheme, plan, or system in doing an act," and, regardless, in my view, the evidence could not be properly admitted for the purposes the prosecution advances. See and compare *People v Crawford*, 503 Mich 990; 924 NW2d 248 (2019) (this Court erred when it concluded "that evidence of the 2011 robbery served the proper purpose of showing intent, MRE 404(b)(1)."); *People v Denson*, 500 Mich 385; 902 NW2d 306 (2017) (the trial court erred when it admitted evidence of a prior assault with the intent to do great bodily harm (AWIGBH) conviction under MRE 404(b) where the defendant was charged with AWIGBH and claimed self-defense; the prior act was not material to rebutting the self-defense claim nor was it sufficiently similar to the charged offense to make it relevant). Finally, even if evidence of the Puhr AWIM could be properly admitted for a noncharacter purpose during a trial on the Whiting armed robbery, the prejudicial effect of introducing such evidence would certainly be substantially more prejudicial than probative. *People v Galloway*, 335 Mich App 629, 646-647; 967 NW2d 908 (2020). Undoing this prejudice with a limiting jury instruction seems unlikely. *Id.* at 647.

This leads to a related point regarding the proper analysis to be applied when deciding whether permissive joinder is appropriate, namely, whether the Puhr AWIM presented "the potential for . . . prejudice stemming from the . . . nature of the evidence," MCR 6.120(B)(2), and whether severance was "appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense." MCR 6.120(B). The trial court never addressed either question because it assumed that the evidence of each offense would be admissible in a trial for the other under MRE 404(b). The trial court's misapplication or misunderstanding of the law in reaching its decision was an abuse of discretion *People v Humphrey*, 313 Mich App 309, 318; 877 NW2d 770 (2015).

For these reasons, I respectfully dissent.

/s/ Anica Letica

---

[14] Defendant mentioned self-defense regarding the Puhr incident without elaboration. See generally *People v Leffew*, ___ Mich ___; ___ NW2d ___ (2022) (discussing common law self-defense and the Self-Defense Act, 780.791 *et seq.*).