PEOPLE v POWELL

Docket No. 77-1702. Submitted February 14, 1979, at Detroit.—Decided May 5, 1980.

Elijah Powell was convicted of second-degree murder, Recorder's Court of Detroit, Joseph E. Maher, J. Defendant appealed, and the Court of Appeals remanded for an evidentiary hearing relative to the pretrial identification process (per curiam opinion of June 7, 1979 [unreported]) and retained jurisdiction. That hearing was held and the Court of Appeals issued the instant opinion. The defendant alleged, among other things, that a witness was erroneously permitted to identify the defendant in court where the only prior identification was a photographic showup conducted while the defendant was in custody, and that the trial court erred by admitting testimony of a radiologist who identified the victim by comparison of chest x-rays. *Held:*

1. One exception to the requirement that photographic identification may not be used where the defendant is in custody is where there is an insufficient number of persons with the defendant's physical characteristics available to participate in a lineup. In this case it was agreed that the defendant's characteristics would prevent a fair lineup. The photographic identification was a reasonable alternative. In addition, the photographic identification was not unduly suggestive.

2. The testimony of the radiologist was properly admitted. The radiologist was duly qualified to make the identification by comparison of the x-rays. The evidence was before the jury, and, as with all expert testimony, was to be weighed by them as to its probative value.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 371.8.

Admissibility of evidence of photographic identification as affected by allegedly suggestive identification procedures. 39 ALR3d 1000.

[2] 29 Am Jur 2d, Evidence §§ 371 *et seq.,* 1143.

[3, 4] 29 Am Jur 2d, Evidence § 371.6.

[5] 29 Am Jur 2d, Evidence §§ 799, 800.

Preliminary proof, verfication, or authentication of x-rays requisite to their introduction in evidence in civil cases. 5 ALR3d 303.

1. CRIMINAL LAW — IDENTIFICATION — PHOTOGRAPHS — PROPER
   LINEUPS — PHYSICAL CHARACTERISTICS.

   Photographs should not be used to identify an in-custody accused;
   this rule has some exceptions, one of which is where there is an
   insufficient number of persons with the defendant's physical
   characteristics available for lineup participation.

2. CRIMINAL LAW — EYEWITNESS IDENTIFICATION — FAIRNESS —
   TOTALITY OF CIRCUMSTANCES.

   The fairness of pretrial identification procedures is to be judged
   on the totality of circumstances.

3. CRIMINAL LAW — IDENTIFICATION — SHOWUPS — PHYSICAL DISSIMI-
   LARITIES — TOTALITY OF CIRCUMSTANCES.

   Physical dissimilarities between a suspect and other showup
   participants does not constitute impermissible suggestiveness
   per se; any degree of suggestibility must be judged by the
   totality of the circumstances.

4. CRIMINAL LAW — IDENTIFICATION — SHOWUPS — EVIDENCE —
   WEIGHT OF EVIDENCE — ADMISSIBILITY OF EVIDENCE.

   The validity of an identification resulting from a police showup is
   a question for the jury; the question presented concerns the
   weight to be given such identification, not its admissibility.

5. EVIDENCE — IDENTIFICATION — X-RAY IDENTIFICATION — EXPERT
   WITNESSES.

   Testimony by a duly-qualified expert regarding the identification
   of a body by the comparison of x-rays is not subject to the
   requirement that the technological principle involved must first
   be shown to be accurate and acceptable within the scientific
   community; such testimony is properly admissible as expert
   testimony and is to be weighed by the jury the same as any
   other expert testimony.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Michael R. Mueller,* Director, Prosecutor's Repeat Offenders Bureau, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Thomas A. Neenan,* for defendant on appeal.

Before: CYNAR, P.J., and D. E. HOLBROOK, JR., and D. C. RILEY, JJ.

D. C. RILEY, J. Defendant Elijah Powell was convicted by a jury on February 17, 1977, of second-degree murder, MCL 750.317; MSA 28.549. The trial involved the killing of one Christal Davis, whose burned torso, absent head and limbs, was discovered in a Washtenaw County park on October 3, 1975. Defendant was sentenced to a term of 80 to 120 years imprisonment, appeals as of right, and questions several evidentiary rulings by the court below.

Defendant alleges that the court erroneously permitted a witness to identify the defendant in court where the only prior out-of-court identification was at a photographic showup conducted while the defendant was in custody.

The record reveals that on the morning of October 1, 1975, Thomas Lipkea, while driving near the park where the homicide victim was discovered, noticed a thin column of smoke rising from a wooded area. Shortly thereafter, he observed a 1972 Caprice pull out of that same area and eventually come to a stop behind his auto as both waited for the change of a traffic signal. Through his rearview mirror, Lipkea viewed its occupant for approximately ten seconds. Over objection at trial, he was allowed to identify the defendant as the driver of that vehicle.

The witness further testified that about two weeks after the incident a photo showup was conducted at police headquarters, at which time he identified the defendant from a group of six photographs. The record shows that defendant was in custody at the time.

In *People v Anderson,* 389 Mich 155, 186-187; 205 NW2d 461 (1973), the Supreme Court held

that, subject to certain exceptions, identification by photograph should not be used where the accused is in custody. Those exceptions apply when:

(1) it is not possible to arrange a proper lineup,

(2) there is an insufficient number of persons available with defendant's physical characteristics,

(3) the nature of the case requires *immediate* identification,

(4) the witnesses are at a place far distant from the location of the in-custody accused, and

(5) the subject refuses to participate in a lineup and by his actions would seek to destroy the value of the identification.

Identification procedures are to be judged on the totality of the circumstances. *People v Richmond,* 84 Mich App 178, 181; 269 NW2d 521 (1978). Here it was the mutual decision of the police and the defense that the defendant's middle age and distinctive physical characteristics (five feet, nine inches, 269 pounds) would prevent any fair lineup. There simply were not sufficient persons with similar characteristics available for lineup participation at the Wayne County jail. Thus, under *Anderson, supra,* it was not possible to arrange a proper lineup. We believe that the photographic identification thereafter utilized was an acceptable and reasonable alternative.

Defendant also contends that the photographic identification itself was impermissibly suggestive since only three of the six pictures used in the showup accurately depicted a man with the description originally given to police.

It has never been held that physical dissimilarities between the suspect and the other participants in a showup constitute impermissible suggestiveness per se. *Richmond, supra.* Even under normal circumstances, it would be unusual if the

police had six persons with like characteristics locked up in the same jail. *People v Lloyd,* 5 Mich App 717, 724; 147 NW2d 740 (1967). When the police are confronted with a person of *unique* characteristics such as the defendant, finding sufficient comparable persons from the jail or from available police officers becomes extremely unlikely. Under these circumstances, one must judge any degree of suggestibility by the totality of the circumstances. See *Richmond, supra,* 181.

We believe that given the set of instant facts, the photographic identification was not impermissibly suggestive. Defendant's counsel was present during the officer's perusal of mug shots from which the showup photographs were selected. The officer testified that some 100 photographs were considered before the six were chosen. Defendant's counsel did not object to the ultimate shots selected. If there were sharply distinguishing physical characteristics that the attorney did not notice which might have impaired the validity of the witness's identification, this lack of trustworthiness could have been argued before the jury at trial. See *People v Herrera,* 42 Mich App 617; 202 NW2d 515 (1972).

"[T]he purpose of a lineup is identification. If the defendant is the tallest man in the lineup, and if he believes that this impairs the validity of the identification, he should see that the jury is apprised of that fact. This is a question of the weight to be given the lineup identification, not its admissibility. It presents no basis for a new trial." *Lloyd, supra,* 724-725.

Defendant next alleges that the court erred when it permitted a radiologist to identify the discovered torso as that of Christal Davis through a comparison of chest x-rays. At trial, Dr. William

Martel compared an x-ray of the burned torso and one taken of Christal Davis during her stay in a hospital approximately four and one-half years earlier. He stated that in his judgment both x-rays were taken of the same individual. Defense counsel objected, asserting that no foundation had been laid to show that this was a scientifically accepted and reliable method of identification. The trial judge ruled that Dr. Martel was qualified to give an opinion concerning the identification of the torso. We affirm that decision.

There is no question that Dr. Martel was sufficiently qualified as an expert witness, having testified that he was a professor of medicine at the University of Michigan Medical School and a specialist in the area of radiology for about 20 years. He stated that in his career he had viewed more than 100,000 x-rays, and had often viewed those films in order to establish that more than one was of the same person. Further, he had on previous occasions successfully measured his ability to match x-rays of the same individual. He indicated that identification of the x-rays was based upon wide variation in the shape of ribs and bone clavicles and calcific densities common within the cartilage of each one of the many ribs. Such densities, he noted, were very irregular in configuration. In comparing the ante and post mortem x-rays in the present case, Dr. Martel remarked that the calcification densities on every one of the ribs was "identical in the minutest irregularity". After explaining the steps taken and circumstances relied on in arriving at his conclusion, the doctor concluded that, based on all three of the above factors, there was no doubt in his mind that the two x-rays were of the same person.

We are unable to agree with defendant that the

question of admitting the testimony involved should be considered within the realm of "scientific evidence", and thus subject to the requirement that the validity of the technological principle involved must first be shown to be accurate and acceptable within the scientific community. See, *People v Tobey,* 401 Mich 141; 257 NW2d 537 (1977), *People v Barbara,* 400 Mich 352; 255 NW2d 171 (1977). We are not concerned with an unproven or disputed scientific instrument, such as a polygraph or voiceprint. Indeed, even if we were, the accuracy or legitimacy of the x-ray as a scientific procedure would not be open to refutation. Furthermore, it cannot be genuinely argued that the use and comparison of x-rays has not been sufficiently established and accepted within the medical profession.

We also note that, unlike polygraphs and voiceprints which are primarily used in connection with criminal law and investigation (and possibly suspect on that basis), x-ray technology has developed independent of the criminal justice system, and is not subject to the inherent dangers of the testimony of partial or interested witnesses whose livelihood depends upon the acceptance of the technique involved. *Tobey, supra,* 145. Nor is the question of the correlative relation between an instrument's physiological accuracy and its capability to perceive or annul deceptive efforts present in the case of x-ray.

While defendant maintains that identification by x-ray, as opposed to the underlying scientific technique of the x-ray procedure itself, is at issue here, we believe the question is properly one of opinion testimony typically within the competence and province of an expert witness. See *Commonwealth v Devlin,* 365 Mass 149; 310 NE2d 353 (1974).

Qualified as an expert, and relying on his experience in the field of radiology, Dr. Martel stated that, based upon the comparison of x-rays, the body discovered and Christal Davis, in his professional opinion, were one and the same. The evidence was properly before the jury, and, as with all expert testimony, was to be weighed by them as to its probative value. *People v Gray,* 57 Mich App 289, 296; 225 NW2d 733 (1975).

We have reviewed defendant's other relevant claims of error and find them to be of no merit. The testimony of Marguerite Davis regarding the statements allegedly made by Christal Davis immediately prior to her disappearance was properly admissible under the state of mind exception to the hearsay rule. *Hazen v Elmendorf,* 365 Mich 624, 630; 113 NW2d 892 (1962), *People v Solomon,* 47 Mich App 208, 213; 209 NW2d 257 (1973), *rev'd on other grounds* 391 Mich 767 (1974).

Nor did the lower court err in denying defendant's motion to quash the search warrants issued for defendant's apartment and person, or in refusing to suppress evidence seized pursuant thereto. Absent the technically inaccurate factual statement contained in the affidavit to the apartment warrant, see *People v Staffney,* 70 Mich App 737, 742; 246 NW2d 364 (1976), *lv den* 401 Mich 819 (1977), both underlying affidavits included factual averments sufficient to support a finding of probable cause.

Affirmed.