PEOPLE v THORIN

Docket No. 64394. Submitted April 13, 1983, at Lansing.—Decided
June 6, 1983. Leave to appeal applied for.

Defendant, Steven J. Thorin, was charged and bound over for
trial in the Delta Circuit Court on a charge of criminal sexual
conduct in the first degree (CSC-I). Defendant was found guilty
by a jury of criminal sexual conduct in the third degree (CSC-
III). The trial court, Clair J. Hoehn, J., sentenced defendant to
10 to 15 years imprisonment. Defendant appeals raising several
issues. *Held:*

1. CSC-IV is not a necessarily included lesser offense of CSC-I.
The trial court did not err in instructing on CSC-I and CSC-III
only. A court is not required to *sua sponte* instruct on all
possible lesser included offenses and cognate offenses when it
chooses to instruct *sua sponte* on one lesser included offense.
The decision whether to request instructions is often a matter
of trial strategy and defense counsel's failure to request in-
structions here was not a serious error indicating ineffective-
ness of counsel.

2. Where a request is made to charge the jury on a lesser

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 876.

[2] 75 Am Jur 2d, Trial § 880.

[3] 75 Am Jur 2d, Trial § 877.

[4] 5 Am Jur 2d, Appeal and Error §§ 803, 808.

[5] 65 Am Jur 2d, Rape § 63.

[6] 29 Am Jur 2d, Evidence § 370.

Admissibility, weight, and sufficiency of blood-grouping tests in
criminal cases. 2 ALR4th 500.

Blood grouping tests. 46 ALR2d 1000.

[7] 29 Am Jur 2d, Evidence §§ 818, 822, 829.

Admissibility of experimental evidence to determine chemical or
physical qualities or character of material or substance. 76
ALR2d 354.

[8] 29 Am Jur 2d, Evidence §§ 180, 181.

81 Am Jur 2d, Witnesses §§ 2, 8.

Uniform Act to secure attendance of witnesses from without a state
in criminal proceedings. 44 ALR2d 732.

[9] 5 Am Jur 2d, Appeal and Error §§ 867, 938.

included offense, the trial judge's duty is determined by the evidence. If evidence is presented which would support a conviction of a lesser offense, refusal to give the requested instruction is reversible error but, in the absence of such a request, the trial court does not err by failing to instruct on the included offenses. Such rule also applies where the trial court *sua sponte* instructs on one lesser included offense.

3. Error, if any, resulting from the trial court's exclusion of cross-examination testimony from the prosecution's medical expert as to what would likely be found under the fingernails of the assailant was made harmless when defense counsel directed the same question to a subsequent expert witness and was given an answer and such fingernail evidence was subsequently fully explored.

4. The trial court did not abuse its discretion by denying defendant's motion to dismiss on the ground that there had been an insufficient showing of personal injury. There was sufficient evidence of extreme mental anguish to go to the jury.

5. Evidence from blood grouping tests may be used to show possible connections between a defendant and the criminal act charged. The weight of such evidence is for the jury's determination. Blood type evidence which places the defendant within a group of the population is relevant evidence.

6. Electrophoresis blood type testing results, testified to by a Michigan State Police forensic serologist, may be admitted in evidence.

7. The prosecutor used due diligence in attempting to produce res gestae witness Herbert Okinen. The prosecutor utilized the uniform act to secure the attendance of witnesses. The failure to use the act, where applicable, precludes a finding of due diligence when a res gestae witness is not produced at trial.

8. The Court of Appeals will not review a defendant's sentence where such sentence is procedurally correct and within statutory limits. The absence of such appellate review does not deny the defendant due process.

Affirmed.

1. Criminal Law — Criminal Sexual Conduct — Lesser Included Offenses.

Criminal sexual conduct in the fourth degree is not a necessarily included lesser offense of criminal sexual conduct in the first degree (MCL 750.520b, 750.520e; MSA 28.788[2], 28.788[5]).

2. Trial — Jury Instructions — Lesser Included Offenses.

A court need not *sua sponte* instruct on all possible lesser

included and cognate offenses where it chooses to instruct *sua sponte* on one lesser included offense.

3. TRIAL — JURY INSTRUCTIONS — LESSER INCLUDED OFFENSES.

The duty of the trial judge is determined by the evidence where a request has been made to charge the jury on a lesser included offense; the refusal to give such a requested instruction is reversible error if evidence has been presented which would support a conviction of a lesser charge, however, in the absence of such a request, the trial court does not err by failing to instruct on the included offenses; such rule also applies in regard to additional lesser included offenses where a trial court *sua sponte* instructs on one lesser included offense.

4. APPEAL — HARMLESS ERROR — EXPERT TESTIMONY.

Error, if any, resulting from a trial court's exclusion of cross-examination testimony from a prosecutor's medical expert was rendered harmless where defense counsel directed the same question to a subsequent expert witness who answered the question and thus the question was fully explored.

5. EVIDENCE — CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — PERSONAL INJURY.

Sufficient evidence of personal injury, *viz:* mental anguish, is shown in a trial for criminal sexual conduct to overcome a motion for dismissal on the ground that there had been an insufficient showing of personal injury where the complainant testified that she had been unable to return to work for a week after the incident, she remained in the house for that entire week and thereafter refused to work nights and where she stopped going out to her car alone at night and was very frightened by sudden noise and unexpected people entering her house (MCL 750.520a[f]; MSA 28.788[1][f]).

6. CRIMINAL LAW — EVIDENCE — BLOOD GROUPING TESTS — RULES OF EVIDENCE.

Blood grouping tests may be used to show possible connections between a defendant and the criminal act charged; blood type evidence which places the defendant within a group of the population is relevant evidence (MRE 401).

7. CRIMINAL LAW — EVIDENCE — ELECTROPHORESIS TESTING.

Evidence of electrophoresis testing results, testified to by a Michigan State Police forensic serologist, is admissible in a trial for criminal sexual conduct.

8. Criminal Law — Trial — Witnesses — Res Gestae Witnesses — Uniform Act To Secure Attendance of Witnesses.

It is the prosecution's duty to endorse all res gestae witnesses and produce them at trial; the uniform act to secure the attendance of witnesses provides a procedure for compelling the attendance of out-of-state witnesses; the prosecutor's failure to use the act, where applicable, precludes a finding of due diligence where a res gestae witness is not produced at trial (MCL 767.40, 767.91 *et seq.;* MSA 28.980, 28.1023[191] *et seq.).*

9. Appeal — Criminal Law — Court of Appeals — Sentences — Due Process.

The Court of Appeals will not review a sentence imposed upon a defendant by a trial court where such sentence is procedurally correct and within statutory limits; the refusal to review such a sentence does not deny the defendant due process of law.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Steven L. Pence,* Prosecuting Attorney, and *Leonard J. Malinowski,* Assistant Attorney General, for the people.

State Appellate Defender (by *Mardi Crawford),* for defendant on appeal.

Before: Danhof, C.J., and Allen and D. F. Walsh, JJ.

Allen, J. Defendant was charged and bound over for trial on a charge of criminal sexual conduct in the first degree (CSC-I), MCL 750.520b; MSA 28.788(2). The alleged assault occurred on the night of September 17, 1981, in Escanaba. He was tried by a jury January 25-27, 1982, and found guilty of criminal sexual conduct in the third degree (CSC-III), MCL 750.520d; MSA 28.788(4). Sentenced on March 9, 1982, to 10 to 15 years in prison, he appeals as of right raising six issues.

The complainant testified that on September 17, 1981, she bowled at the Bowlarama in Escanaba, leaving there about five minutes before 12:00 mid-

night. As she was getting into her car, she was hit by a man wearing a ski mask. The man pushed her into the passenger seat and drove out of the parking lot to an unmarked private road where he forced her to disrobe. He then performed oral and vaginal sex and attempted anal sex. At no time did he remove the ski mask. He then had complainant drive him back to the same parking lot where he had first accosted her. Complainant testified that when the man got out of the car, she tried to run him down, but lost sight of him after chasing him around a couple of times.

Complainant then drove to the front of the bowling alley where she told several men she had been raped and believed her assailant was still in the parking lot. The men ran to the parking lot where one of the men, Greg Morehouse, saw a man jump up from behind a green and white van saying "they're after me". Morehouse and the other men chased the man, but lost sight of him near the Delta Inn Motel. The motel manager called the police who, upon searching the parking lot, found the defendant lying underneath a pickup truck. Defendant was arrested. Later Morehouse looked underneath the green and white van and found a ski mask similar to the mask complainant had described as being worn by her assailant.

Defendant testified that he bowled the night of the alleged assault and then went to Stropich's Bar, where he watched a football game on TV which ended shortly before midnight; that he went out to his car and drove to the bowling alley where, while in the process of parking, his car was struck by a dark sports car; that he chased the car on foot, caught up with it and knocked on the car door; that as he did so, he heard the word "rape"

and saw three men running toward him shouting threats; that he fled to the Delta Inn parking lot where he hid beneath a parked truck. Two witnesses, the Stropich brothers, testified that defendant was a member of their bowling team and had gone with them to Stropich's Bar that night where they watched a game on TV.

I. *Did the trial court err by instructing* sua sponte *on CSC-III, in addition to the charged offense of CSC-I, without also instructing on CSC-IV?*

Defendant argues that CSC-IV is a lesser offense under CSC-I and that assault with intent to commit sexual penetration and attempted CSC are also lesser included offenses on which the jury should have been instructed even though no request for such instructions was made. To hold otherwise, argues defendant, allows the trial court to pick and choose among several possible included offenses and thus guide the jury. The issue raised is of first impression.

This Court has held that CSC-IV is not a necessarily included lesser offense of CSC-I. *People v Baker #2,* 103 Mich App 704; 304 NW2d 262 (1981); *People v Green,* 86 Mich App 142; 272 NW2d 216 (1978). The Court in *Baker #2* noted that CSC-IV is usually a factually included lesser offense and found error because the trial court failed to give the *requested* CSC-IV instruction. In *People v Worrell,* 111 Mich App 27; 314 NW2d 516 (1981), this Court found assault with intent to commit CSC to be a cognate lesser offense of CSC-III. In *Green, supra,* p 152, this Court held that "attempt is necessarily included in the completed offense". But see *People v Browning,* 106 Mich App 516, 528; 308 NW2d 264 (1981), where the failure to give an attempt instruction was found to be harmless error where the testimony supported

a finding "that the victim was, in fact, raped and no evidence [was presented] to support a conclusion that there was a mere attempt to rape her".

In our opinion, it was not error for the court to instruct on CSC-I and CSC-III only. Defendant has cited no authority, and we can locate none, for the proposition that a court must *sua sponte* instruct on all possible lesser included offenses and cognate offenses when it chooses to instruct *sua sponte* on one lesser included offense. Had defendant wished to have other offenses submitted to the jury, he could have requested them. The decision whether to request instructions on lesser offenses is often a matter of trial strategy, and we do not believe that defense counsel's failure to so request was a serious error indicating ineffectiveness of counsel under *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976); *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969). We see no reason to find that the general rule stated by the Supreme Court in *People v Richardson,* 409 Mich 126, 135; 293 NW2d 332 (1980),[1] should be inapplicable where the trial court *sua sponte* instructs on one lesser included offense.

II. *Did the trial court err by excluding testimony from the prosecution's medical expert as to what would likely be found under the fingernails of the assailant?*

On cross-examination of the people's medical

---

[1] In *Richardson,* the Supreme Court said:

"The rule in Michigan has long been:

" 'Where a request has been to charge the jury on a lesser included offense, the duty of the trial judge is determined by the evidence. If evidence has been presented which would support a conviction of a lesser offense, refusal to give the requested instruction is reversible error but, in the absence of such a request, the trial court does not err by failing to instruct on the included offenses. *People v Jones,* 273 Mich 430; 263 NW 417 (1935).' *People v Phillips,* 385 Mich 30, 36; 187 NW2d 211 (1971)."

expert, defense counsel asked the witness what, if anything, he would expect to find under the fingernails of the assailant. When the prosecution objected, the trial court sustained the objection and precluded argument on the question. Defendant claims that the trial court abused its discretion. Assuming, *arguendo,* that this was error, the error became harmless when defense counsel directed the same question to a subsequent expert witness and was given an answer. The fingernail evidence was subsequently fully explored and the jury was informed that no fecal matter or blood was found in the defendant's fingernail scrapings and that such scrapings could have been removed by defendant before the warrant was issued. Thus, any error was harmless. *People v Prast (On Rehearing),* 114 Mich App 469; 319 NW2d 627 (1982); *People v Oliver,* 111 Mich App 734; 314 NW2d 740 (1981).

III. *Did the trial court abuse its discretion by denying defendant's motion for dismissal on the ground that there had been an insufficient showing of personal injury?*

When the prosecution rested, defendant moved to dismiss on the ground there had been an insufficient showing of personal injury, *viz:* "mental anguish" as required in MCL 750.520a(f); MSA 28.788(1)(f). The court ruled it would submit both CSC-I and CSC-III to the jury and allowed the prosecution to reopen proofs.

*People v Gorney,* 99 Mich App 199; 297 NW2d 648 (1980), *lv den* 410 Mich 911 (1981), held that the term "mental anguish" as applied to the offense of CSC-I must be "extreme" or "serious". Two indicia of extreme mental anguish were noted by the Court: "the need by the victim for psychiatric care or some interference with the victim's

ability to conduct a normal life, such as an absence from the workplace". *Id.,* p 207. In *People v Izzo,* 116 Mich App 255; 323 NW2d 360 (1982), this Court found sufficient evidence of "extreme" mental anguish to go to the jury even though the complainant was not given psychiatric care and at best was described as extremely upset with "residual, albeit perhaps only short term, emotional suffering". Clearly, under *Izzo,* there was sufficient evidence of extreme mental anguish to go to the jury. Even under *Gorney,* the case was jury decidable. Complainant testified that she was unable to return to work for a week after the incident, remaining in the house for the entire time, and that, when she finally did return, she refused to work nights. She also stopped going out to her car alone at night and, according to her husband, was very frightened by any sudden noise or any unexpected person entering the house.

IV. *Was the admission of blood typing and electrophoresis evidence error?*

Prior to trial defendant moved for suppression of evidence of blood typing tests, including a process known as electrophoresis. Body fluids taken from both the defendant and the victim were analyzed at the State Police laboratory as a result of which it was determined that defendant was a type O secretor and the victim a type A secretor. Sperm found on paper tissues found in the back seat of the car where the sexual assault occurred matched defendant's blood type O. Samples of the paper tissues, saliva and blood were also analyzed by electrophoresis which revealed that the stains on the tissues matched defendant's body fluids, but not the victim's. Defendant contends the evidence was inadmissible under *People v Sturdivant,* 91 Mich App 128; 283 NW2d 669 (1979).

On the question of the admissibility of blood type evidence which serves only to include defendant in a class of possible perpetrators, various panels of this Court have come to diverse conclusions. *Sturdivant* held that blood type evidence that the assailant was a non-secretor had no probative value and was inadmissible. In *People v Horton,* 99 Mich App 40; 297 NW2d 857 (1980), another panel of this Court rejected *Sturdivant* and found that blood grouping tests may be used to show possible connections between a defendant and the criminal act charged.

"The overwhelming majority of courts allow the use of blood grouping evidence in criminal trials, both to connect victims with defendants and, of interest here, to show that defendants could have left blood stains on crime scenes. See, *e.g., People v Vallez,* 80 Cal App 3d 46; 143 Cal Rptr 914 (1978); *People v Gillespie,* 24 Ill App 3d 567; 321 NE2d 398 (1974); *State v Thomas,* 78 Ariz 52; 275 P2d 408 (1954); *Commonwealth v Statti,* 166 Pa Super 577; 73 A2d 688 (1950), and *Shanks v State,* 185 Md 437; 45 A2d 85 (1945). See also Anno: *Blood grouping tests,* 46 ALR2d 1000. New York has adopted the position that such evidence is without probative value and is, thus, inadmissible. *People v Robinson,* 27 NY2d 864; 317 NYS2d 19; 265 NE2d 543 (1970)." *Horton, supra,* p 50.

The Court concluded that "[t]he weight of such evidence is for the jury's determination". *Horton, supra,* p 51.

Cases decided since *Sturdivant* and *Horton* have followed the *Horton* rationale. See *People v Camon,* 110 Mich App 474; 313 NW2d 322 (1981); *People v Young,* 106 Mich App 323; 308 NW2d 194 (1981), *lv gtd* 414 Mich 865 (1982); *People v Oliver, supra; People v Eaton,* 114 Mich App 330; 319 NW2d 344 (1982).

This panel concludes that the *Horton* rationale is the better view. Blood type evidence which places the defendant within a group of the population is relevant according to the definition of relevant evidence contained in MRE 401, in that it does have some tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The defendant also argues that evidence of electrophoresis testing was erroneously admitted because general scientific recognition of electrophoresis was not established and because electrophoresis has been criticized by some in the scientific community. In *Young, supra,* this Court determined that electrophoresis results, testified to by a Michigan State Police forensic serologist, were admissible. The Court discussed the standard for admitting polygraph results set forth in *People v Barbara,* 400 Mich 352; 255 NW2d 171 (1977), and found that standard to be inapplicable because,

"defendant offered no evidence that the electrophoresis technique used to compare the blood samples was scientifically inaccurate and because defendant has not convinced us that the accuracy of electrophoresis is seriously disputed the trial court did not abuse its discretion in admitting Mark Stolorow's testimony without first requiring that the *Davis/Frye [People v Davis,* 343 Mich 348; 72 NW2d 269 (1955); *Frye v United States,* 54 US App DC 46; 293 F 1013 (1923)] standard be met." *Young, supra,* p 329.

We find that *People v Young, supra,* is controlling in this case but note that application for leave to appeal in that case has been granted by the Supreme Court.

V. *Did the trial court err in impliedly finding*

*that the prosecutor had exercised due diligence in attempting to produce Herbert Okinen, an endorsed witness?*

It is the prosecution's duty to endorse all res gestae witnesses and produce them at trial. MCL 767.40; MSA 28.980; *People v Freeland,* 101 Mich App 501; 300 NW2d 616 (1980). The uniform act to secure the attendance of witnesses in MCL 767.91 *et seq.*; MSA 28.1023(191) *et seq.,* provides a procedure for compelling the attendance of out-of-state witnesses. Recent decisions of this Court have found that the prosecutor's failure to use the uniform act precludes a finding of due diligence. *People v Nieto,* 33 Mich App 535; 190 NW2d 579 (1971); *People v Gaffney,* 51 Mich App 526; 215 NW2d 587 (1974).

Review of the transcript discloses that the prosecution did use due diligence in its attempt to produce res gestae witness Herbert Okinen. The uniform act was utilized. The prosecutor and defense counsel were both in contact with Okinen and with Okinen's attorney. Arrangements were made for Okinen to fly to Michigan to testify at trial. Although the prosecutor admitted that Okinen's attorney was never certain whether Okinen would appear at trial, it does not appear that there were any further steps which the prosecution could have taken, short of requesting that Okinen be taken into custody by the police in the state where he was located. Given the limited exposure which Okinen had to the initial abduction, we do not believe that such extreme steps were warranted.

VI. *Does the absence of appellate review of the length of defendant's sentence deny due process?*

In a detailed and carefully prepared supplemental brief, appellate counsel contends that the sen-

tence imposed on defendant was excessive and that this Court's refusal to take upon itself appellate review of the sentencing in effect denied defendant due process. It is not claimed that the sentence was based on improper considerations or that the sentence is not within the statutory limits. Defendant argues that the length of his sentence cannot be justified on the basis of rehabilitation, isolation or deterrence. Consequently, he argues that it is arbitrary and subject to modification by this Court.

Although the Supreme Court has granted leave to appeal in three cases[2] specifically to address the sentence length review issue, it is still unclear whether the rule of nonreviewability will be changed. Until such time as the Supreme Court alters the existing law, sentences, such as defendant's, which are procedurally correct and within the statutory limits, are not reviewable by this Court.

Affirmed.

---

[2] In February, 1982, the Supreme Court granted leave on the issue of reviewability of sentences in *People v Waits,* 412 Mich 914 (1982), *People v Coles;* 412 Mich 917; 317 NW2d 189 (1982), and *People v Joseph Gonzales,* 412 Mich 917 (1982).